## APPEAL OF A. R. SWARTZ & CO., INC.

Docket No. 3688.   Decided October 29, 1926.

COMPENSATION OF OFFICERS.—Compensation at the rate of $175 and $115 per week, respectively, for the two principal officers who are also the sole stockholders of a mercantile corporation during a year when the gross business exceeded $190,000, *held* to be reasonable compensation for such officers and a proper deduction from gross income.

FALSE AND FRAUDULENT RETURNS.—Corporation income and profits-tax returns and the circumstances under which the same were prepared and filed examined, and such returns, although found to be erroneous, are not false and fraudulent under the provisions of the Revenue Act of 1918. The record discloses no evidence of intent to evade taxes sufficient to warrant the assertion of a 50 per cent penalty.

*F. R. Gibbs*, Esq., and *E. Barrett Prettyman*, Esq., for the petitioner.

*G. R. Conybeare*, Esq., and *J. E. Marshall*, Esq., for the Commissioner.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1919 and 1920 of $1,572.40 and $7,956.05, respectively, and penalties for the same years of $786.20 and $3,985.62. The deficiency for the year 1919 results from an increase of sales by $9,604.10 and from an alleged decrease of purchases in the amount of $4,201.72. For the year 1920 closing inventory has been increased from $21,196.30 to $31,794.25 and the deduction made on account of salaries paid has been disallowed in the amount of $6,080. The penalties are imposed under section 250 (b) of the Revenue Act of 1918, on the ground that the taxpayer filed false and fraudulent returns for the years 1919 and 1920 with the intent to evade tax.

### FINDINGS OF FACT.

The taxpayer was organized in 1915 under the laws of New York, and for a number of years, 1919 and 1920 included, was engaged in business at 47 Court Street, Binghamton, N. Y., as a retail dealer in ladies', misses', and children's ready-to-wear garments. The corporation is not now in existence, having since been dissolved.

Capital stock of $10,000 par value was authorized and, with the exception of a small amount, was held by A. R. Swartz and his wife, Lottie Swartz. A. R. Swartz was president and general manager of the taxpayer corporation and his wife was vice president and assistant buyer. During the taxable years both of these individuals devoted all of their time to the business. Prior to the incorporation of the taxpayer, A. R. Swartz had been employed

in similar work by a number of dry-goods firms. For several years he was buyer and manager of the ladies' department of Herman Straus and Sons Co., of Louisville, Ky., one of the largest firms in that city. Subsequently, he was general manager of the Star Dry Goods Co., located in the same city.

The taxpayer rented space to outside parties for the operation of shoe and millinery departments, charging as a rental 10 per cent of the gross sales. For the purpose of operation these departments were treated as parts of the taxpayer's business. The taxpayer had nothing whatever to do with the purchase of the stock-in-trade of these departments and assumed no responsibility for the payment for such goods. The total sales from the shoe and millinery departments during the year 1919 amounted to $43,180.73. The rental, being 10 per cent of the gross sales, was $4,318.07. Rentals were reported on the taxpayer's return for that year in the amount of $4,286.83. Gross sales from the taxpayer's business for the year 1919 were reported on the return as $147,629.33. The taxpayer's books show gross sales for the year in the same amount. Purchases during the year are shown on the return in the amount of $114,165.62, whereas the books show that purchases during the year were $114,163.62.

The taxpayer's return for 1920 shows a closing inventory of $21,196.30. The Commissioner has increased this amount to $31,794.25, which is admitted by the taxpayer as being correct.

During the year 1919 salaries paid to Mr. and Mrs. Swartz were $5,200 and $1,800, respectively. At a meeting of the directors held in 1919, a resolution was passed increasing the salary of Mr. Swartz to $175 per week and that of Mrs. Swartz to $115 per week. These salaries were effective from January 1, 1920, and were deducted in full by the taxpayer on its return for that year. This deduction was disallowed by the Commissioner in the amount of $6,080, of which $2,600 was deducted as a part of the salary of Mr. Swartz, and $3,480 as salary of Mrs. Swartz.

OPINION.

TRUSSELL: With reference to the computation of the deficiencies the difficulties presented by this appeal are negligible. The questions involved are questions of fact, which are very definitely disposed of by the evidence presented at the hearing.

For the year 1919, the only items in issue are sales and purchases, and the books of the taxpayer disclose that sales were correctly reported by the taxpayer on its return. Purchases were reported on the taxpayer's return in the amount of $114,165.62, whereas the tax-

payer's books show that total purchases amounted to $114,163.62, resulting in a net understatement of $2.

For the year 1920, the only items involved, so far as the computation of the tax is concerned, are closing inventory and salaries paid to Mr. and Mrs. Swartz. With reference to closing inventory, the taxpayer has admitted that the correct amount is $31,794.25 and that it was erroneously stated on the return as $21,196.30. In the matter of salaries paid to Mr. and Mrs. Swartz, the only point for determination is the reasonableness thereof, since the record shows that the increases were regularly authorized by the board of directors at a meeting held some time during the year 1919. The exact date of the meeting is not disclosed, due to the fact that the taxpayer could not locate its minute book. Internal Revenue Agent Dewey, a witness for the Commissioner who had previously examined the books of the taxpayer, stated that he had seen, in the course of his examination, the minute book of the corporation, which disclosed the fact that the increase in the salaries of Mr. and Mrs. Swartz had been duly authorized at a meeting of the board of directors held prior to January 1, 1920. From the evidence, it appears that Mr. Swartz had previously had a great deal of experience in the management of business such as that in which the taxpayer was engaged, and to a very large extent the responsibility for the successful operation of the business rested upon him. From the nature of the business, its size, the previous experience of Mr. Swartz, and the responsibility which rested on him, we see no reason for concluding that the salary of $175 per week paid to him for his services during the year 1920 was unreasonable. With reference to Mrs. Swartz, it appears that during the years in question she devoted her full time to the business of the corporation. She was vice president and assistant buyer, and there is nothing to show that the salary paid to her during the year 1920 was excessive, when considered in connection with the duties and responsibilities of positions such as those held by her; and, in view of the fact that the board of directors saw fit in a regularly conducted meeting to fix her compensation at $115 per week, we must conclude, in the absence of any facts to the contrary, that they properly judged the worth of her services to the taxpayer corporation.

Only one question remains for disposition, that is, whether or not the Commissioner was justified in imposing penalties amounting to 50 per cent of the deficiencies proposed, on the ground that the returns of the taxpayer for the years 1919 and 1920 were false and fraudulent and filed with the intent to evade tax. Sales and purchases reported by the taxpayer on its return for that year were substantially correct, sales being correctly reported and purchases understated in the amount of only $2, and, since these were he

only items affecting 1919 income that are in controversy, there is no basis for the assertion of the penalty for that year.

In the case of the 1920 return, the taxpayer has admitted an understatement of closing inventory in the amount of $10,598.15. There is nothing in the record, however, which shows that the understatement was fraudulently made with the intent to evade tax. Furthermore, A. W. Goodman, assistant business manager of the taxpayer corporation during the years 1919 and 1920, testified that a separate statement was attached to the return for the year 1920, showing the correct amount of closing inventory, and when it appeared that such a statement was not attached to the return when introduced in evidence the taxpayer submitted in evidence a statement purporting to be a copy of the statement attached to the return at the time it was filed. This copy disclosed closing inventory for the year 1920 in the correct amount.

During the course of the testimony many references were made by Internal Revenue Agent Dewey, a witness for the Commissioner, to an audit of the taxpayer's books by an accounting firm, which audit, it was contended, disclosed facts proving that the taxpayer's returns were false and fraudulent. There is reason to believe from the trend of his testimony that the report of Revenue Agent Dewey, which formed the basis for the assertion of the fraud penalty by the Commissioner, was, to a great extent, based upon such audit by the firm of accountants rather than upon the books of the taxpayer corporation. This belief is strengthened by the fact that the alleged overstatement of purchases for 1919, as disclosed by Revenue Agent Dewey's report, is based upon purchases as stated by the audit and not upon purchases as stated by the taxpayer's books.

The alleged understatement of sales for the year 1919 was attributed by Dewey to the omission of sales made during January of that year from total sales for the year, but when confronted with the books of the taxpayer he admitted that total sales reported on the taxpayer's returns did include January sales and that the understatement was in fact due to the intermingling of sales made by the taxpayer in its business and the sales of the millinery and shoe departments. The books disclosed, however, that sales from the shoe and millinery departments were recorded separately from the sales of the business of the taxpayer and that the taxpayer reported income from the departments mentioned in the form of rentals.

On these facts there is no justification for a conclusion that the taxpayer's returns for the years 1919 and 1920 were fraudulent and filed with the intent to evade tax.

*Judgment will be entered on 15 days' notice, under Rule 50.*